MEMORANDUM OPINION


No. 04-04-00248-CR



EX PARTE Anthony RAMIREZ



From the 81st Judicial District Court, Wilson County, Texas


Trial Court No. 04-03-0127-CVW


Honorable Donna Rayes, Judge Presiding



Opinion by: Paul W. Green, Justice


Sitting: Paul W. Green, Justice

 Sarah B. Duncan, Justice

 Sandee Bryan Marion, Justice


Delivered and filed: August 18, 2004


AFFIRMED


 Anthony Ramirez has been arrested and charged with murder. He filed an application
for writ of habeas corpus seeking a reduction in his pretrial bail from the original amount of
$250,000.00 to $25,000.00. After a hearing, the trial court denied the reduction, and
Anthony appealed. We affirm the trial court's order.

Standard of Review

 We review the trial court's decision on the reduction of bail for abuse of discretion,
taking into consideration the five factors outlined by article 17.15 of the Code of Criminal
Procedure. (1) Ex parte Dueitt, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975); Ex parte Wood,
952 S.W.2d 41, 42 (Tex. App.-San Antonio 1997, no pet.); Tex. Code Crim. Pro. Ann. art.
17.15 (Vernon Supp. 2004). The defendant challenging the amount of bail has the burden
to show the amount is excessive in light of the article 17.15 factors. Ex parte Rubac, 611
S.W.2d 848, 849 (Tex. Crim. App. 1981). 

Background

 Anthony is charged with the shooting death of his friend, Paul Guajardo, at the home
of Anthony's grandfather. At the time of the bond hearing, Anthony had not been indicted. (2)
After the shooting, Anthony left Paul at the hospital and notified Paul's family that Paul had
been shot, then disappeared for several hours, finally turning himself in to police with the
assistance of an attorney. During the time police were searching for Anthony, his family
denied officers access to the scene, cleaned blood and moved furniture at the scene of the
shooting, and may have cleaned the alleged murder weapon.

Discussion

 First, we must consider whether the bail set by the trial court is sufficiently high to
give reasonable assurance that Anthony will appear for trial without the amount of bail
becoming an instrument of oppression. See Ex parte Wood, 952 S.W.2d 41, 43 (Tex.
App.-San Antonio 1997, no pet.). Anthony's ability to make bail may be considered but is
not dispositive. See id. Anthony's grandfather was the only witness to testify regarding the
family's ability to make bail.

 Willie Ramirez testified that he could only raise $2500.00 to contribute to bail. His
home is appraised at $235,000.00, but he only bought the home three years ago and did not
know how much he owed or what his down payment had been. Anthony's father lives in San
Antonio but is presently laid off from his job. Willie Ramirez thought his grandson had been
working but did not know the name of the company or what kind of salary he made. Willie
Ramirez knew that Anthony quit high school in early 2003. He obtained his GED and
enrolled in community college in the fall of 2003. Anthony's grandparents paid for his food,
clothes, and school, with a little money for spending money. Willie Ramirez did not believe
Ramirez had any bank account or assets. (3)

 Anthony has lived with his grandfather most of his life. Willie Ramirez testified that
if Anthony were released on bond, Anthony could continue to live with him or with
Anthony's father. Although Anthony's grandfather is a long-time resident of Floresville,
there was little testimony about Anthony's ties to the community that might prevent him from
fleeing in the face of what could be a severe sentence.

 Next, we consider the nature of the crime and the circumstances under which it was
committed. Anthony claimed the shooting was an accident. Officer Laughlin, an
investigator with the Wilson County Sheriff's office, testified that, based on his experience
and information provided to him by the medical examiner, he did not believe the shooting
could have occurred as Anthony describes. Laughlin testified that Anthony's family
obstructed the initial investigation, although they have apparently been more cooperative
since then.

 Finally, we consider the safety of the community. Anthony has one past arrest for
fighting. Officer Brenda Ullevig of the Floresville Police Department testified that she has
a long history with Anthony in her capacity as officer assigned to the school. Anthony has
a history of delinquent behavior, including drinking, fighting, and belligerence toward
teachers and law enforcement. In high school, Anthony was enrolled in alternative school
because of his disruptive conduct. When he failed to comply with the rules of alternative
school, he was removed and placed in boot camp before he quit school. 

 Officer Ullevig testified that Paul had provided information that Anthony was dealing
drugs. Based on the officer's observation of Anthony's movements at the school after he
quit attending, she was inclined to believe this information, but she had not been able to
corroborate it. Anthony's grandfather did not seem to be aware of what Anthony was doing
or where he was going even though Anthony lived in his home. He did not know how
Anthony got a gun. Neither his grandfather or father seemed to have much influence on
Anthony's behavior.


Conclusion

 Based on the circumstances as outlined above, we hold the trial court did not abuse
its discretion in refusing to reduce the amount of bail from $250,000.00. We affirm the trial
court's order.


 Paul W. Green, Justice

Do Not Publish
1. Article 17.15 provides the following five guidelines: (1) the bail shall be sufficiently high to give a reasonable
assurance that the undertaking will be complied with; (2) the power to require bail is not to be so used as to make it
an a instrument of oppression; (3) the nature of the offense and the circumstances under which it was committed are
to be considered; (4) the ability to make bail is to be regarded, and proof may be taken on this point; and (5) the future
safety of a victim of the alleged offense and the community shall be considered.
2. Prosecutors explained they had been waiting for lab analysis on some evidence to be returned before they
submitted the case to the grand jury.
3. Officer Ullevig testified she was familiar with the car Anthony drove, but there was no testimony that he
owned the vehicle or what its value might be.